UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JALEN RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-CV-06456 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| CITY OF CHICAGO, MICHAEL | ) | |
| PFEIFFER, JOSEPH TONER, | ) | |
| DAVID CAREY, OFFICER EVANS, | ) | |
| and QUINCY KEITH, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

In May 2019, Quincy Keith was shot in the back. He eventually identified Jalen

Richardson in a photo lineup as the person responsible for shooting him. R. 1, Compl.

¶¶ 15, 19, 22, 24.[1] Richardson was arrested a few months after Keith identified him,

and then he was held in pretrial detention for nearly three years. *Id.* ¶¶ 24, 27. Before

his state court trial began, Richardson moved to suppress the identification testimony

from the photo lineup, arguing that the lineup was unduly suggestive. *Id.* ¶¶ 28–30.

The state court denied the motion, finding the lineup "text book, proper, and not un-

duly suggestive." R. 28, Defs.' Mot. at 2; Compl. ¶ 30. But close to the start of trial,

Keith changed his story about the details of his shooting, and the Cook County State's

Attorney's Office dismissed the entire case. Compl. ¶¶ 31, 33.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed,
a page or paragraph number.

Richardson then brought this suit against the officers involved in his arrest, as well as the gunshot victim, Quincy Keith, alleging that his pretrial detention amounted to false arrest, wrongful detention, and malicious prosecution. *Id.* ¶¶ 53–57, 64–71.[2] He also brought *Monell* liability, *respondeat superior* liability, and indemnification claims against the City of Chicago. *Id.* ¶¶ 58–63, 72–78. The Defendants now move to dismiss, asserting that the false-arrest claim is time barred and that his other claims lack merit because the officers had probable cause for arresting Richardson. Defs.' Mot. For the reasons stated in this Opinion, the Defendants' motion is granted in part and denied in part.

## I. Background

In evaluating the motions to dismiss, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Richardson's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

One night in May 2019, Quincy Keith walked down an alleyway with another person and then crossed into a backyard. Compl. ¶¶ 13–15. A third person in the backyard shot Keith in the back. *Id.* ¶ 15. The police investigation got off to a slow start—no physical evidence was collected from the scene, and Keith told the officers that he did not know who shot him. *Id.* ¶¶ 16–18.

A few months later, Officers Joseph Toner and Michael Pfeiffer administered a photo lineup to Keith. *Id.* ¶ 19. The officers showed Keith six photos of six men, one

---

[2]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

of whom was Richardson. *Id.* ¶ 21; *see id.* ¶ 22. Only two of the six photos showed pictures of men with afros—the same hairstyle that Richardson wore at the time. *Id.* ¶¶ 20–22. Richardson alleges that the police "subtly influenced" Keith to pick Richardson out of the lineup as the shooter. *See id.* ¶ 22. The lineup was not audio or video recorded. *Id.* ¶ 23. A few months later, based on the photo-array identification alone, Richardson was arrested, charged with attempted murder and armed robbery, and detained. *Id.* ¶¶ 24–27.

During the discovery stage of the state court prosecution against Richarson, he moved to suppress the photo-array identification, asserting that it was suggestive. *See id.* ¶¶ 28–30. He argued that because only two of the six men in the photo array wore afros, Officers Toner and Pfeiffer influenced Keith to pick Richardson out of the lineup and identify him as the shooter. *Id.* ¶¶ 21–22. Despite the officers' concession at the hearing that "there was some suggestiveness in the identification procedure," the state trial court denied Richardson's motion to suppress, concluding that the photo array was not flawed. *Id.* ¶ 30; Defs.' Mot. at 2.

A few months later, just before the trial began, things turned in Richardson's favor. Keith changed his story about what happened on the night of his shooting. Compl. ¶ 31. He explained that Richardson confronted him at the opening of the alley, where Keith tripped, lost his phone, keys, and money, and the two got into a physical fight. *Id.* ¶ 32. Keith further explained that he followed Richardson down the alleyway with his companion anyway because Richardson had something to sell to the pair. *Id.* As a result of Keith changing his story, the state prosecutor dismissed the

case in its entirety and Richardson was released from detention. *See id.* ¶¶ 33–34.
Despite having never stood trial for the crime, Richardson spent three years, from
ages 19 to 22, in jail awaiting his trial. *Id.* ¶ 34.

To recoup for the time spent in jail, Richardson sued Officers Toner, Pfeiffer,
David Carey, and Evans, as well as Quincy Keith, bringing claims for false arrest,
unlawful detention, and malicious prosecution. *Id.* ¶¶ 53–57, 64–71. Richardson also
sues the City of Chicago, arguing that the City is directly liable under *Monell* for
federal constitutional violations and otherwise responsible for the officers' unlawful
conduct based on state law claims. *Id.* ¶¶ 59, 62.

The Defendants now move to dismiss the claims against them, contending that
Richardson's false-arrest claim is time barred and that his other claims lack merit
because the police lineup was proper and Richardson was lawfully arrested. Defs.'
Mot. at 3. For the reasons below, the Defendants' motion to dismiss the unlawful-
detention and malicious-prosecution claims is denied, whereas the City's motion to
dismiss the *Monell* claim is granted.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only
include "a short and plain statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the de-
fendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

### A. False Arrest

Richardson alleges that the officers arrested him without probable cause because the photo lineup itself was impermissibly suggestive and there was no other evidence connecting Richardson to the crime. Compl. ¶¶ 21–27, 33–34; R. 32, Pl.'s Resp. at 5–6. Because there was no probable cause to believe that he had committed

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

a crime, Richardson argues, the officers violated the Fourth Amendment when they arrested him. *Id.*[4] The Defendants counter that Richardson's false-arrest claim is time barred because he filed his complaint more than two years after he was arrested. Defs.' Mot. at 3–4.

To determine the statute of limitations for claims brought under § 1983, "courts look to state law for the length of the limitations period" (though federal law still governs when a § 1983 claim accrues). *McDonough v. Smith*, 588 U.S. 109, 115 (2019). In Illinois, claims for personal injuries are governed by a two-year statute of limitations, so § 1983 claims for false arrest and wrongful pretrial detention—which fall into the category of personal-injury claims—are subject to that limitations period. *See Herrera v. Cleveland*, 8 F.4th 493, 495 n.2 (7th Cir. 2021) (citing 735 ILCS 5/13-202). A claim for false arrest accrues "at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *see also Serino v. Hensley*, 735 F.3d 588, 591 (7th Cir. 2013) (holding that a false-arrest claim is an exception to the rule that a § 1983 claim accrues when a plaintiff knows or has reason to know of the injury forming the basis of his action; rather, the statute of limitations begins to run when the arrestee is detained pursuant to legal process).

Before addressing timeliness in Richardson's specific case, it is worth explaining at the outset that the Defendants are correct that a court may—sometimes—

---

[4]Richardson does not present his false-arrest and wrongful-pretrial detention claims as two separate counts, but the Court interprets the allegations as two distinct claims, one for the arrest itself, and the other for the resulting pretrial detention. Compl. ¶¶ 53–57.

6

consider a statute-of-limitations argument at the pleading stage. The statute of limi-

tations is an affirmative defense, Fed. R. Civ. P. 8(c)(1), so "a plaintiff ordinarily need

not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v.*

*Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). The exception to this rule applies

where "the allegations of the complaint … set forth everything necessary to satisfy

the affirmative defense." *Id.* (cleaned up). Here, the allegations in the complaint are

clear enough to consider the limitations for the false-arrest claim at the pleading

stage. And Richardson proffers no facts or other circumstances that would toll the

limitations clock.

Specifically, Richardson was arrested on October 19, 2019, so his claim accrued

on that date. Compl. ¶¶ 24–25; *Wallace*, 549 U.S. at 397. To bring a timely claim,

then, the complaint should have been filed before October 19, 2021—but Richardson

did not bring this suit until over one year later, on November 18, *2022. See* Compl.

Because there is no disputing the untimeliness of the false-arrest claim, the claim

must be dismissed even at this early stage.

## B. Wrongful Pretrial Detention

On the claim for wrongful pretrial detention, the Fourth Amendment prohibits

arrests (and ensuing seizures) that are made without probable cause. *Brooks v. City*

*of Chicago*, 564 F.3d 830, 832 (7th Cir. 2009).[5] Officers who make an arrest without

---

[5]The complaint alleges that Richardson's three-year pretrial detention restricted his liberty in violation of due process. Compl. ¶ 54. But the Seventh Circuit has emphasized that "*Manuel I* makes clear that the Fourth Amendment, not the Due Process Clause, governs a

probable cause—or *caused* such an arrest to happen—may be held liable for a violation of the Fourth Amendment. *Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006). If the arrest results in pretrial detention, then the Fourth Amendment requires probable cause to support the continued seizure, meaning that if an arresting officer has knowledge of facts and circumstances that would justify a prudent person to believe that the detainee committed a criminal offense, then the pretrial-detention claim is defeated. *Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020). It follows that "probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (cleaned up).

The Defendants contend that the wrongful-detention claim fails on the merits because the officers had probable cause when they arrested Richardson. Defs.' Mot. at 5. According to the Defendants, Keith's identification of Richarson in the photo array caused the officers to reasonably believe that Richardson had committed the shooting, thus establishing probable cause. *Id.* (citing *Miles v. McNamara*, 2014 WL 948884, at *3 (N.D. Ill. March 11, 2014) (explaining that officers have probable cause "when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense") (cleaned up); *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000)). The Defendants assert that "[i]n the

---

claim for wrongful pretrial detention." *Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 365–69 (2017)).

context of a photographic identification, when the victim 'points to a picture and cries, 'That's the one!,' the 'reasonable and prudent' person will naturally tend to believe that the person so identified is guilty.'" Defs.' Mot. at 5 (quoting *Yattoni v. Oakbrook Terrace*, 801 F. Supp. 140, 146 (N.D. Ill. 1992)). The officers also contend that the photo array was reliable and not unduly suggestive, so Keith's identification of Richardson was sufficient to give the arresting officers probable cause to arrest. Defs.' Mot. at 5–7.

Viewing the allegations in the complaint as true, however, and giving Richardson the benefit of reasonable inferences, the complaint adequately alleges a lack of probable cause. First, Richardson alleges that the photo array was unduly suggestive because "only two of the six people" depicted wore an afro hair style. Compl. ¶ 22. So when Keith picked Richardson, he was essentially looking at a two-person photo array, which—when giving Richardson the benefit of reasonable inferences at the pleading stage—undermined the officers' factual premise for probable cause. Next, Richardson states that the officers' investigation otherwise "yielded no credible evidence against [Richardson] warranting probable cause." Compl. ¶¶ 22, 24. So, according to Richardson at this pleading stage, all the police had was a flawed photo array. Though it is a close call, at the pleading stage, these allegations sufficiently allege that the officers should not have relied on Keith's identification alone for probable cause to arrest Richardson. Of course, as the case proceeds into discovery, the defense might very well be able to introduce additional evidence to show probable cause, and Richardson will have to come forward with more detailed facts about the photo array.

9

And even then, Richardson will likely face a qualified immunity defense from the officers. But, for now, the wrongful pretrial-detention claim under the Fourth Amendment survives.

### C. *Monell* Liability

On municipal liability, Richardson brings a claim against the City of Chicago under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). He alleges that the City and the Chicago Police Department routinely "fail to investigate and discipline officers who arrest suspects without probable cause and that the practice led to Richardson's wrongful detention. Compl. ¶¶ 35–36, 46. The City argues that the complaint lacks sufficiently detailed allegations that Chicago had a custom or practice of disregarding no-probable-cause arrests or that the City's practices were the moving force behind the violation of Richardson's constitutional rights. Def. Mot. at 9–14.

The City may be held liable for the constitutional violations committed by the officers only if the violation was caused by the City's final policymaker or by a municipal policy or custom. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell*, 436 U.S. at 694)). To survive a dismissal motion, Richardson must adequately allege that the injury was caused by (1) an express policy; (2) a common practice that was so widespread and well settled as to constitute a custom or usage with the force of law even without written law or express policy; or (3) "a person with final policymaking authority." *First Midwest Bank*, 988 F.3d at 986 (cleaned up). Though *Monell* claims are not subject to "any

10

heightened pleading standard," Richardson must go beyond relying on legal conclu-sions and conclusory allegations and "provide some specific facts" to support his claim. *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (cleaned up). Finally, the allega-tions must sufficiently allege that the City's policy was the "moving force" behind the constitutional violation. *First Midwest Bank*, 988 F.3d at 987.

Though any number of factual scenarios may show a widespread custom or practice, a plaintiff must generally allege multiple incidents of wrongdoing to properly allege a *Monell* violation. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). The purpose of this general requirement is to ensure that the plaintiff has identified "a true municipal policy …, not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *see also Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Holding a city liable for a single instance of wrongdoing is too close to applying the *respondeat superior* theory of liability, which the Supreme Court has explicitly held does not satisfy *Monell*. *Monell*, 436 U.S. at 691; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).

Richardson's complaint falls short of plausibly alleging a custom or practice of disregarding non-probable-cause arrests. To show a pattern of misconduct, Richard-son relies on general categories of criticisms drawn from the United States Depart-ment of Justice's 2017 report concerning misconduct within the Chicago Police De-partment and other cases describing a "code of silence" within the police department. *See* Compl. ¶¶ 37–47. But the complaint does not take the next step to *specify* what

11

about those Justice Department criticisms or what about those other cases demonstrates how the policy or practice caused Richardson's wrongful detention or that the policy was the moving force behind his wrongful detention. It is one thing to do the work of digging through the Justice Department Report to cite specific prior misconduct or failings that would justify a *Monell* allegation—some plaintiffs are able to do just that and adequately allege a *Monell* claim. But Richardson has not done that here. Nor can the Court plausibly infer *Monell* liability from the other allegations in the Complaint. Because Richardson did not adequately allege that his injury was caused by the wrongdoing described in the Justice Department Report or the other unspecified instances of misconduct, this claim must be dismissed. The dismissal is without prejudice for now. If discovery (or re-pleading) can fill the gaps, then Richardson may propose to amend the Complaint to fix the *Monell* claim.

### D. Malicious Prosecution

Richarson alleges that the officers maliciously prosecuted him when they arrested him, detained him, and provided misinformation that was instrumental to his prosecution. Compl. ¶¶ 64–71. To adequately state a claim for malicious prosecution under Illinois law, Richardson must allege "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liataud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (cleaned up). The Defendants argue that this claim should be dismissed because the officers had probable cause to

arrest Richardson, or at least Richardson did not adequately plead the absence of probable cause. Defs.' Mot. at 14. Because Richardson adequately alleged that the officers lacked probable cause when they arrested him, see *supra* Section III(B), and the Defendants do not otherwise challenge the other elements of the claim, the malicious-prosecution claim survives the motion to dismiss.

### E. *Respondeat Superior* and Indemnification

Richardson alleges that the City is liable to him for the officers' wrongful actions. Yes and no. For starters, it is well established that the *respondeat superior* theory of liability is not applicable to § 1983 claims. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). So Richardson's *respondeat superior* claim is limited to his state law claim against the officers for malicious prosecution. Under Illinois law, to hold the City liable for the officers' conduct, Richardson must adequately allege that the officers were acting within the scope of their employment. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007). An employee's conduct is within the scope of their employment when: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the [employer]." *Id.* at 992. The employee's subjective intent about the task matters. *Id.* at 995.

Here, Richardson adequately alleges that the City is liable for the officers' malicious prosecution under a *respondeat superior* theory. The Defendants also concede this point—they say that "[t]he City admits that the Officers were acting in the course and scope of their employment with the City at all times relevant to the allegations

in Plaintiff's pleading, thereby admitting vicarious liability for their actions." Defs.'
Mot. at 15. The Defendants assert that this claim fails only because the officers had
probable cause to arrest Richardson. *Id.* at 14. Because the City concedes *respondeat
superior* liability (if the officers are found liable) and the malicious-prosecution claim
withstands the officers' motion to dismiss, see *supra* Section III(D), the *respondeat
superior claim* also withstands the motionas to that claim.

Finally, Richardson alleges indemnification against the City for the claims of
wrongful pretrial detention and malicious prosecution. Compl. ¶¶ 75–78; *see* 745
ILCS 10/9-102 (imposing a statutory duty on local public entities to indemnify em-
ployees for actions taken in their official capacity). Because those claims survive
against the officers survive, the indemnification claim survives too.

## IV. Conclusion

The Defendants' motion to dismiss the claims of unlawful detention and mali-
cious prosecution, R. 28, is denied, but the false-arrest claim is dismissed as time-
barred. Also, the *Monell* claim is dismissed, without prejudice for now.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2025

14